CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
Rha
MAY 0 2 2005
JOHN F. CORCORAN, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HASSAN SHABAZZ (dismissed), ELTON WILLIAMS, Plaintiff, | Civil Action No. 7:04-cv-00499 |
| v. | MEMORANDUM OPINION |
| VIRGINIA DEPARTMENT OF CORRECTIONS, et al., Defendants. | By: Hon. Jackson L. Kiser Senior United States District Judge |

Plaintiff Elton Williams, a Virginia inmate proceeding pro se, claims in amendments to the original complaint in this case that officers at Wallens Ridge State Prison (WRSP) violated his constitutional and statutory rights in 2001 by beating and harassing him and destroying his personal property because of his Rastafarian religious beliefs. Upon review of the record, I find that Williams' claims as amended under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §2000cc, et seq., must be dismissed, sua sponte, pursuant to 28 U.S.C. §1915(e)(2), as the defendants are entitled to qualified immunity against Williams' claims for monetary damages under this statute. I do find, however, that Williams states possible claims under the First and Eighth Amendments arising from a series of events from April to November 2001 as described in his affidavit (Dkt. No. 19), which I will construe as a motion to amend. I will grant Williams' amendments (Dkt. Nos. 19 and 77), direct the clerk to attempt service of process on the newly named defendants and direct the existing defendants to assist plaintiff in identifying the John Doe defendants to these remaining claims.

I.

Williams and a group of other inmate plaintiffs brought this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In the initial complaint, plaintiffs alleged that the use of various inmate control devices and various living conditions at Wallens Ridge State Prison violated the Eighth Amendment. All claims brought by plaintiffs other than Williams have previously been dismissed. Williams also submitted an affidavit (Dkt.

1

No. 19) that I must construe as a motion to amend to add claims under the First and Eighth Amendments, alleging that various officers acted with deliberate indifference to known risks of harm, used force and destroyed personal property because of plaintiff's religious beliefs.[1] Williams later amended his complaint to raise these allegations as statutory claims under RLUIPA.[2]

The defendants named in the original complaint moved for summary judgment as to the claims in the complaint and moved to dismiss all of Williams' additional claims because they did not relate to the original complaint. I granted summary judgment as to Williams' claims of excessive force and prison conditions from the initial complaint, pursuant to 42 U.S.C. §1997e(a), upon finding that he had not demonstrated exhaustion of administrative remedies as to these claims. See Memorandum Opinion and Order entered March 11, 2005. I denied defendants' motion to dismiss in part, however, and directed Williams to amend his RLUIPA claims to indicate how the defendants were personally involved in the alleged violations. He has submitted a motion to amend (Dkt. No. 77), which I will grant.

II.

Williams bases his amended claims on the following sequence of facts. On April 18, 2001, Officer Minton asked Williams if he would like outside recreation, and Williams said, "Yes." Minton and another officer placed Williams in an outdoor recreation cage, but did not provide him with a coat even though there were two inches of snow on the ground outside.

---

[1] This affidavit brings claims against the following defendants: R. A. Young, S. K. Young, Sgt. Hamilton, Sgt. Collins, C/O Kiser, C/O Shoemaker, C/O McKinney, C/O Collens, C/O John Doe, and C/O Minton. With the exception of R. A. Young and S. K. Young, who were named in the original complaint, none of the officers named in the affidavit have been served because Williams never formally moved to amend his complaint to add them as defendants. I will direct the clerk to add them to the case.

[2] Williams alleges that he filed informal complaints and pursued the regular grievance procedure through Levels I and II as to the 2001 incidents presented in his affidavit (Dkt. No. 19). Therefore, I will not dismiss any of these claims under 42 U.S.C. §1997e(a) at this time. If the defendants disagree with Williams' assertion that he has exhausted his remedies, they may address this issue appropriately in their responsive pleadings.

Williams was wearing only a thin jumpsuit and had no hat. When Williams learned that he would not have a coat, he asked the officers to return him to his cell. Instead, they left him in the cage for two hours in the extreme cold. Minton blamed the lack of a coat on the prison laundry.

On September 14, 2001, Sgt. Hamilton and Officers Kiser, Shoemaker, and McKinney conducted an annual cell shakedown. Williams complied with their orders to strip and shake his hair. When Shoemaker ordered Williams to open his mouth, he was unable to open it very wide because he had recently had two back teeth pulled and his jaw was still sore. Shoemaker ordered Williams to open his mouth wider, but would not listen to Williams' explanation. Finally, Williams used his fingers to stretch his mouth open and the wounds from the extractions began to bleed and his jaw area later swelled. The officers also made Williams kneel while they searched his 2-foot-long dread locks very roughly, pulled several hairs out of his scalp, and flushed them down the toilet. Officer Kiser then pulled Williams up by his hair to a standing position. Shoemaker ripped the cover off Williams' Bible while laughing. Kiser called Williams a "nigger," and Sgt. Hamilton said, "I guess you're growing your hair for religion–God wants you to grow your hair (dirty)." Kiser threatened that if Williams moved, he would be short a few dread locks. Traumatized by this experience, Williams cried and later went on a 13-day hunger strike.

On September 20, 2001, after officers had escorted Williams to the medical infirmary because of his hunger strike, Minton packed up Williams' belongings and threw away his Rastafarian literature, called Final Calls Newsletters. Although Williams did not see Minton destroy his literature, his property records show that he had the newsletters before the hunger strike and that Minton packed his belongings.

One night in early November 2001, officers told Williams to pack his property for a "surprise" transfer to Buckingham Correctional Center. While he was being escorted to the transport bus in full restraints, Sgt. Hamilton slammed Williams to the floor, and twelve other officers, most of whom Williams cannot identify, stepped on his back, bent his legs, punched

3

him and put their knees in his back. An unidentified officer pulled out something sharp and cut off one of Williams' dread locks as a "souvenir." Besides Hamilton, Williams only identified Sgt. Collins and C/O Collens among those involved in this incident. When he reached the new prison, Williams sought and received medical attention. In his most recent pleading, he also states that he still suffers pains at night stemming from this experience. He alleges that the loss of his hair left a gap in his experience with God.

III.

I find that the defendants are entitled to qualified immunity as to Williams' claims under RLUIPA. State officials are entitled to qualified immunity against suits for damages if a reasonable officer facing the same situation would not have known that his actions violated plaintiff's clearly established constitutional right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). The court "must inquire whether the established contours of the [right] were sufficiently clear at the time of the [alleged violation] to make it plain to reasonable officers that their actions under these particular circumstances violated" plaintiff's constitutional right. Winfield v. Bass, 106 F.3d 525, 531 (4th Cir. 1997) (en banc). See also Vathekan v. Prince George's County, 154 F.3d 173 (4th Cir. August 28, 1998). "[T]he exact conduct at issue need not have been held to be unlawful" so long as the unlawfulness of the conduct is manifest under existing authority. Wilson v. Layne, 526 U.S. 603, 614-15 (1999). When a legal question has "been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state," it is clearly established for purposes of qualified immunity. Wallace v. King, 626 F.2d 1157, 1161 (4th Cir.1980);

Williams requests only monetary relief related to his RLUIPA claims, which are based on past events and not on continuing actions impacting his religious beliefs. I find that at the time of the RLUIPA violations that Williams alleges--April to November 2001--the applicability of that statute to state prison officials was not clearly established. The United States Supreme Court had ruled that a highly similar statute, the Religious Freedom Restoration Act (RFRA), 42

4

U.S.C. §2000bb, et seq, was invalid as applied to states and localities. City of Boerne v. Flores, 521 U.S. 507 (1997). After Congress enacted RLUIPA in an attempt to correct the constitutional deficiencies the Supreme Court had found in RFRA, district and circuit courts disagreed as to the new statute's validity as applied to state organizations and facilities, and the issue is now before the United States Supreme Court. See, e.g., Cutter v. Wilkenson, 349 F.3d 257 (6th Cir. 2003), cert. granted, 125 S. Ct. 308 (2004); Madison v. Riter, 240 F.Supp.2d 566 (W.D. Va. 2003), rev'd, 355 F.3d 310 (4th Cir. 2003), petition for a writ of certiorari pending. Given the history of continuing controversy over the extent to which Congress can dictate the legal standard under which state prison officials must defend their decisions regarding accommodation of inmates' religious practices, I conclude that the applicability of RLUIPA to state prison officials was not clearly established in 2001 such that any reasonable officer would have known that defendants' actions violated Williams' rights under RLUIPA. Therefore, I find that defendants are entitled to qualified immunity against the RLUIPA claims, and I will dismiss such claims from this action accordingly, pursuant to §1915(e)(2).[3] Under this section, the court may summarily dismiss claims filed in forma pauperis if it is clear that the defendants are immune to such claims or if plaintiff fails to allege facts stating any claim upon which relief can be granted. See Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983)(court may summarily dismiss claims based on affirmative defense under former version of §1915).

IV.

Taking Williams' allegations in the light most favorable to him, I find that Williams' allegations in his affidavit regarding the incidents of deliberate indifference, excessive force and religious persecution from April to November 2001 give rise to possible claims under the First and Eighth Amendments. Hudson v. McMillian, 503 U.S. 1 (1992); O'Lone v. Shabazz, 482 U.S. 342 (1987); Turner v. Safley, 482 U.S. 78 (1987). Therefore, I decline to dismiss these

---

[3]Although I herein dismiss Williams' RLUIPA claims from the action, I will consider the information in his motion to amend (Dkt. No. 77) regarding his religious beliefs insofar as it is pertinent to his First Amendment claims.

5

claims under §1915(e)(2) as to the following defendants: R. A. Young, S. K. Young,[4] Sgt. Hamilton; Sgt. Collins, C/O Kiser, C/O Shoemaker, C/O McKinney, C/O Collens, C/O John Doe(s) related to the November 2001 incident, and C/O Minton. I will direct the clerk to attempt service of process upon the newly named defendants. Furthermore, I will direct Defendants R. A. Young and S. K. Young to search their records and to provide plaintiff in discovery with the names and last known addresses of the other officers involved in the alleged incident in 2001. An appropriate order shall be issued this day.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 2nd day of May, 2005.

*/s/ Jackson H. Kiser*
Senior United States District Judge

---

[4] See Shaw v. Straud, 13 F.3d 791, 799 (4th Cir. 1994) (to prove supervisor's liability, plaintiff must prove supervisor's actual or constructive knowledge that his subordinates were engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. I recognize that Williams will be hard pressed indeed to prove all elements of this standard for supervisory liability in this case, but I cannot say without doubt that he cannot meet it. Therefore, I will not dismiss these defendants under §1915(e)(2), and they may make appropriate arguments in a motion for summary judgment. Williams also asserts that Gene Johnson, current director of the Virginia Department of corrections, should also be held liable for the November 2001 violations because Williams filed grievances and internal complaints about the incident. He does not allege facts indicating, however, that Johnson personally reads and responds to inmate grievance appeals as S. K. Young and R. A. Young do or that Johnson otherwise received specific notice of a risk that officers would violate Williams' religious rights as they allegedly did in November 2001. Accordingly, I will dismiss all claims against Johnson, pursuant to §1915(e)(2).