CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for
RAa
NOV 2 8 2005
JOHN F. CORCORAN, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| HASSAN SHABAZZ, # 280460, | ) |
| & ELTON WILLIAMS, # 260920 | ) |
| Plaintiffs, | ) Civil Action No. 7:02cv00499 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| VIRGINIA DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) By: Jackson L. Kiser |
| Defendants. | ) Senior U.S. District Judge |

The plaintiff, Elton Williams, a Virginia inmate proceeding pro se, has filed this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Williams alleges that defendants violated his First and Eighth Amendment rights while he was incarcerated at Wallens Ridge State Prison by failing to provide him with a coat during outdoor recreation on April 18, 2001, by destroying his religious materials on September 11, 2001 and September 20, 2001[1], and by assaulting him on September 14, 2001 and immediately prior to his transport on November 7, 2001. Plaintiff seeks injunctive relief and monetary damages.

Defendants S.K. Young, R.A. Young, Sgt. Hamilton, Sgt. Collins, Correctional Officer McKinney, Correctional Officer Ely, and Lt. Gallihar filed a motion for summary judgment.[2] The court notified plaintiff of defendants' motion as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and advised plaintiff that his failure to reply to the defendants' motion may result in summary judgment being granted for the defendants. Plaintiff filed a response to the

---

[1] In this court's September 12, 2005, memorandum opinion the alleged destruction was mistakenly stated to have occurred only on September 14, 2001.

[2] Although by order entered May 2, 2005 the court ordered that Correctional Officers Kiser, Shoemaker, Collens, and Minton be served and on May 4, 2005 the clerk of the court mailed out a request for the waiver of service to the Office of the Attorney General, those waivers of service were not returned and no further attempts to serve process on those officers has been attempted.

defendants' motion, thus, the matter is ripe for disposition.

Upon review of the record, I find that defendants motion for summary as to Williams' claims regarding the April 18, 2001 incident, the alleged assault on September 14, 2001, and the alleged destruction of his personal property on September 14, 2001 and September 21, 2001 must be granted. Furthermore, I find that defendants S.K. Young, R.A. Young, and Correctional Officer McKinney are also entitled to summary judgment regarding the alleged assault on November 7, 2001. However, I find that Sgt. Hamilton, Sgt. Collins, Correctional Officer Ely, and Lt. Gallihar's motion for summary judgment regarding the November 7, 2001 incident must be denied.

Additionally, as Williams is not entitled to relief on his claims regarding the April 18, 2001 incident, the alleged assault on September 14, 2001, and the alleged destruction of his personal property on September 14, 2001 and September 21, 2001, and as Williams has failed to allege that defendant Correctional Officers Kiser, Shoemaker, and Minton were involved in the November 7, 2001 assault, I find that these defendants must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Further, as defendants have averred that a "Correctional Officer Collens" was not employed by the Virginia Department of Corrections during the period Williams was incarcerated at Wallens Ridge State Prison and as Williams has made no further attempts to better identify the this defendant, I find that all claims against "Correctional Officer Collens" must be dismissed.

## I.     Allegations and Facts

Williams alleges that on April 18, 2001, he was removed from his cell and led to outdoor recreation. He claims that the day was "snowy" and very cold, but when he requested a coat Correctional Officer Minton stated that no coats were available because all the coats had been sent to the prison laundry.[3] Williams then claims he told the officers he no longer wanted to go to recreation, but they refused to return him to his cell. Instead Williams alleges he was put in an outdoor recreation cage and left there outside for approximately two hours, even though he was only wearing a thin jumpsuit. On his return to his cell, Williams states that he could barely walk and had to sit in his cell for several hours before his temperature returned to normal. However, Williams does not allege that he suffered any actual physical harm related to the period he spent outside without a coat. Furthermore, he admits that he did not made any requests for medical care or treatment related to his exposure to cold temperatures.

Williams next alleges that during the annual cell shakedown on September 14, 2001, Sgt. Hamilton and Correctional Officers Kiser, Shoemaker, and McKinney assaulted him and destroyed his personal property. Specifically he alleges that after complying with the officers' orders to strip and shake his hair, he was ordered to open his mouth. However, he claims that due to recent dental surgery he was unably to open his mouth very wide, but correctional officers ordered him to open his mouth wider. To comply with their orders, Williams resorted to using his fingers to stretch his mouth, causing his gums to bleed. He further claims that during the search

---

[3]In support of his claim, Williams avers that the outdoor temperature was below 40 degrees Celsius on the day in question. As 40 degrees Celsius equates to 104 degrees Fahrenheit, it appears that Williams' complaint confuses the Celsius and Fahrenheit scale. The court will give plaintiff the benefit of the doubt and construe his complaint to allege that the temperature was below 40 degrees Fahrenheit on the day in question.

3

the officers slammed his face into the wall, causing his jaw to later swell, and pulled out pieces of his hair. Additionally, Williams complains that Shoemaker ripped the cover off of Williams' Bible and Kiser and Hamilton made threats and disparaging remarks to Williams regarding his ethnicity and religion. Traumatized by his experience, Williams cried and went on a 13 day hunger strike.

Williams medical records reflects that he was examined by medical staff on September 15, 2001, although he told the nurse that his stitches from the dental surgery had "busted out of his gums" on that day causing "a little" bleeding, he made no mention of the alleged September 14, 2001 assault.[4] Furthermore, the nurse's notes reflect that she saw no obvious signs of distress and noticed only a small amount of red drainage from the site of the stitches. However, she did refer him to the dental department for further evaluation.

As a result of the hunger strike, Williams was moved to the medical infirmary on September 21, 2001. He alleges that Correctional Officer Minton packed his belongings and threw away his religious newsletters. Williams admits that he was not present when his religious materials were allegedly destroyed, but alleges his property records indicate that he had the newsletters before the hunger strike. However, the records he submitted to the court show only that he had various religious materials in his possession at the time he was transferred to medical and when he was returned to general population.

Finally, Williams alleges that on November 7, 2001, while being escorted to the transport

---

[4]The court notes that both Williams and defendants have submitted relevant portions of Williams' medical record in support of their motions and responses. Additionally, Williams has provided copies of his grievances and responses to those grievances and information detailing institutional appellate responses and investigation of his claims.

bus in full restraints, Sgt. Hamilton slammed Williams to the floor, and that Sgt. Collins, Lt. Galliher, and Correctional Officers Collens and Ely stepped on his back, bent his knees, punched him, and put their knees in his back.[5] Additionally, he claims one unknown officer cut off one of his dread locks. After the assault Williams was placed on the bus and transferred to Buckingham Correctional Center ("Buckingham"). Additionally, he alleges that he continues to suffer from back spasms related to this assault.

Williams medical records indicate that when he arrived at Buckingham a medical intake exam was conducted. During that exam Williams did not mention the alleged assault nor did he complain of any injury or discomfort. However, approximately six days later he made his first complaint regarding the alleged assault and back pain. Williams was examined by medical staff on November 13, 2001. The nurse's notes indicate that on palpitation Williams' lower back was painful and there was some muscular "tightness." However, at that time Williams declined any pain relievers, but accepted an analgesic balm. Williams made no further complaints until January 2, 2002. At that time he complained of additional pain and requested more of the analgesic balm. Thereafter, Williams continued to make complaints regarding continuing lower back pain. He claims the pain became so great he finally resorted to taking a pain reliever, first Motrin and then when he need something stronger, Naprosyn. Additionally, Williams states that

---

[5]In his complaint and amended complaints, Williams alleges that as many as twelve officers participated in the assault. He specifically named Sgt. Hamilton, Sgt. Collins, and Correctional Officer Collens and named the unknown parties as "John Doe." By order entered May 2, 2005, defendants S.K. Young and R.A. Young were directed to provide the names of any officers who may have been present during the alleged November 7, 2001 incident. In response to that order, defendants stated that an institutional investigation of the alleged incident found that Lt. Galliger and Correctional Officer Ely were the only other prison personnel present in the area during the alleged incident. Accordingly, both Galliger and Ely were added as substitute parties for the previously names "John Does."

5

he continues to suffer from back spasms and discomfort.

## II. Motion for Summary Judgment

Upon motion for summary judgment, the court must view the facts and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. Ross v. Communications Satellite Corp., 759 F.2d 355 (4th Cir. 1985). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 47 U.S. 242 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the adverse party may not rest on the mere allegations or denials of the adverse party's pleadings. Instead, the adverse party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Fed. R. Civ. P. 56(e). If the adverse party fails to show a genuine issue of material fact, summary judgment, if appropriate, may be entered against the adverse party.

### A. Eighth Amendment Claims

Williams claims that the defendants violated his right to be free from cruel and unusual punishment by denying him a coat and forcing him to stay outside in freezing weather on April 18, 2001 and by assaulting him in his cell on September 14, 2001 and before placing him on the

6

transport bus on November 7, 2001. In their motion for summary judgment the defendants argue that Williams suffered nothing more that de minimis injuries, and thus is not entitled to relief.

### 1. Living Conditions

In as much as Williams allegation that on April 18, 2001 he was forced to remain outside in only a thin prison jumpsuit for almost two hours can be construed as a living conditions claim, it fails. While the Eighth Amendment does protect prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions, Williams must show he sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While the time he spent outdoors without a coat may have been uncomfortable and unfortunate, Williams has not alleged anything to suggest that these because of the conditions he has sustained a serious or significant injury or is at risk of a future injury. In fact, Williams admits he never complained to medical staff regarding his exposure and he suffered no substantial harm as a result of the period he spent outdoors. He merely complains that he was cold and it took a few hours for him to warm up completely.

Likewise, Williams fails to state a deliberate indifference claim under the Eighth

7

Amendment. As Williams has failed to establish that he in fact suffered any harm as a result of the two hours he remained outside without a coat, the court finds that he is unable to establish that the limited exposure posed a serious threat. See Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997).

As such, I find that the plaintiff has not presented any issue of material fact and that the defendants are entitled to judgment as a matter of law as to this claim.

### 2.     Excessive Force

Williams alleges that he was subjected to excessive force, in violation of his Eighth Amendment rights, when correctional officers allegedly assaulted him in his cell on September 14, 2001 and before he was place on the transport bus on November 7, 2001. To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-prong standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312,

8

32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762.

Also, the inmate must prove the corrections official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

### a. September 14, 2001 Incident

According to Williams, during the annual cell shakedown on September 14, 2001, officers

9

slammed his face into the wall, ripped out a few strands of his hair, and forced Williams to manually open his mouth, causing the stitches in his gums to bleed and later causing his jaw to swell. The defendants admit that during the shake down officers searched Williams, but assert that there was no physical confrontation as evidenced by the fact that none of the officers filed an incident report related to the search.

By Williams' own admissions and evinced by the picture admitted as Exhibit V to defendants' motion for summary judgment, Williams has an extraordinary number of dread locks.[6] Thus, I find that in searching his hair for contraband a few strands of his hair could have reasonably been pulled out by merely applying the limited amount of force necessary to search such a mass. And as Williams alleges only a few strands were pulled from his head, I find this aspect of his claim of excessive force without merit.

As to Williams' claims that officers forced him to open his mouth and slammed his face into the wall causing his gums to bleed and his jaw to swell, it is clear that little medical intervention was necessary to treat the alleged injuries. Williams admits that he had dental surgery two days prior to the alleged assault. During that surgery two of his back teeth were pulled, stitches were utilized to close the gap in his gums, and he suffered from some pain which necessitated a non-prescription strength pain reliever, Motrin. Williams also admits he was examined by medical staff the day after the alleged assault, three days after the surgery, but during that exam he did not mention the alleged assault. Rather he only complained that his stitches had just "busted" and there was a "little" bit of

---

[6]Although Williams calls into question the date the photograph was taken, whether the photograph was taken on the day he was transferred on November 7, 2001 as defendants allege or on July 11, 2001 as Williams alleges, Williams does not allege that he made any significant change in his appearance or in the styling of his hair between the two dates.

10

bleeding. The nurse noted that there was a minimal amount of red drainage from the stitch site, but Williams had no other signs of distress or discomfort. Furthermore, the nurse noted that as Williams was already receiving Motrin no further pain reliever was necessary, but she did provide him with gauze to stop the bleeding. Williams made no further complaints of injury or discomfort related to the alleged assault.

The absence of any medical documentation of plaintiff's alleged pain or swelling nor any significant injury to the surgery site weigh heavily against a finding of excessive force. See Stanley v. Hejirika, 134 F.3d 629, 637-38 (4th Cir. 1998)(finding a constitutionally insignificant injury where medical records did not substantiate prisoner's claims). By Williams own admission, it is apparent that he did not suffer any serious discomfort or enduring pain as a result of the injury. Plaintiff claims that the stitched area bled a "little" and his jaw became swollen, however, he does not claim that there was any bruising or other visible injury to the area. "[T]emporary swelling and irritation is precisely the type of injury this Court considers de minimis." Taylor, 155 F.3d at 484. Accordingly, I find that the injury he alleges to have suffered related to the September 14, 2001 alleged assault is de minimis and does not amount to a constitutional violation.

Additionally, Williams has failed to allege any facts which establish those extraordinary circumstances on which a plaintiff can prevail on an excessive force claim when he suffers only de minimis injury. Taylor, 155 F.3d at 483. "[N]ot...every malevolent touch by a prison guard gives rise to a federal cause of action." Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997). And merely a lack of due care for the prisoner's interests and safety fails to show the use of force which is "repugnant to the conscience of mankind." See Whitley v. Albers, 475 U.S. 312, 319 (1986)(finding that the infliction of pain in the course of a prison security measure, does not amount to cruel and

11

unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense).

Williams admits that he could not open his mouth wide enough for officers to clearly see the inside. Accordingly, it was reasonable for the officers to require Williams to manually open his mouth so that they could fully search the interior for any contraband. Furthermore, as some degree of force can be reasonably applied in attempting to restrain and search an inmate, I find that Williams claim that he was "slammed" against the wall while being searched, does not present the highly unusual circumstances which result "in an impermissible infliction of pain" or was "of a sort repugnant to the conscience of mankind." Id; see Norman, 25 F.3d at 1263, n. 4.

Based on the foregoing, I find that Williams has not presented any question of material fact related to the September 14, 2001 incident. Furthermore, I find that Williams has suffered a mere de minimis injury; and, he has failed to establish that the defendants employed force "repugnant to the conscience of mankind." Therefore, I find that defendants are entitled to judgment as a matter of law as to this issue and grant their motion for summary judgment.

### b.     November 7, 2001 Incident

According to Williams, as he was being led to the transport bus, in restraints, on November 7, 2001, Sgt. Hamilton slammed Williams to the floor, and twelve other officers including Sgt. Collins, Lt. Galliher, Correctional Officer Collens, and Correctional Officer Ely, stepped on his back, bent his knees, punched him, and put their knees in his back. Additionally, he claims an officer cut off one of his dreadlocks. Williams complains that as a result of the assault he continues to suffer from back pain and discomfort. Defendants flatly deny any alleged assault and argue that if the

12

incident occurred defendant suffered nothing more than de minimis injury. Defendants contend that Williams' medical records support their position because despite being immediately examined by medical personnel on his arrival at Buckingham on November 7, 2001, there is no notation in the record that he had any bruises or swelling nor did he make any complaints of discomfort or even allege he had been assaulted, until six days later. Furthermore, the defendants cite the April 9, 2004 entry in Williams' medical record, in which the nurse noted that Williams attributed his history of back problems to having been involved in a fight with another inmate. However, Williams justifies his failure to immediately notify intake personnel at Buckingham that he had been assaulted by the fact that he was traumatized by the assault. Furthermore, he contends that it is virtually impossible for his back injury to have been caused by a fight with another inmate because during the majority of his incarceration he has been confined in a segregation unit.

Even if Williams alleged back pain and muscle spasms can be construed as nothing more than de minimis injury, I find that when considering the facts in the light most favorable to Williams, if Williams was indeed "jumped" without cause and while restrained by more than ten officers, this may amount to force "of a sort 'repugnant to the conscience of mankind.'" Norman, 25 F.3d at 1263, n. 4. Furthermore, if the court credits Williams version of the events it is apparent that the force used against him was not applied in a good faith effort to restore order, but rather with malice. See Whitley, 475 U.S. at 320-21. Given this, I find that Williams has satisfied both the objective and subjective elements of an excessive force claim and that a genuine issue of material fact exists as to whether or not Williams was subject to excessive force immediately prior to his placement on the transport bus on November 7, 2001. Accordingly, I will deny defendants' Sgt. Hamilton, Sgt. Collins, Lt. Galliher, and Officer Ely's motion for summary judgment as to this claim.

13

Williams has failed to make any allegation as to the personal involvement of R.A. Young, S.K. Young, or Correctional Officer McKinney regarding the alleged assault on November 7, 2001. However, Williams claims that R.A. Young and S.K. Young are liable for the actions of the those prisoner officers who assaulted him because they knew or should have known by the number of grievances and complaints he filed that throughout his incarceration at Wallens Ridge State Prison he had been repeatedly tormented by those officers.

Although the doctrine of <u>respondeat superior</u> is inapplicable to § 1983 actions, supervisory officials may be held liable for the actions of their subordinates if the plaintiff can show: 1) that the supervisor had actual or constructive knowledge that subordinates were engaged in conduct that posed 'a pervasive and high risk' of constitutional injury; 2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices;' and 3) there was an 'affirmative causal link' between the supervisor's inaction and the actual constitutional injury suffered by the plaintiff. <u>Sadler v. Young</u> 325 F.Supp.2d 689, 707 (W.D. Va., 2004); <u>Slakan v. Porter</u>, 737 F.2d 368 (4th Cir. 1984).

Evidence that subordinates' conduct is widespread, or at least has been used on multiple occasions, and that such conduct poses a risk of constitutional injury supports a finding that there is a pervasive and high risk of constitutional injury. <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994). Furthermore, deliberate indifference can be established by a showing of continued supervisory inaction when faced with documented abuses. <u>Id.</u> Finally, in that a person is held liable for the natural consequences of his actions, such actions may form a proximate link between the supervisory defendant and the harm suffered. <u>Id.</u>

In this instance, Williams alleges that R.A. Young and S.K. Young, although not directly and

14

personally responsible for the assault, are liable for the actions of the correctional officers who actually assaulted him. However, Williams has failed to allege specific facts which demonstrate that they were aware of the correctional officers misconduct prior to the alleged violation. In fact, Williams alleges only that due to respective roles as Regional Director and Warden they should have been aware of the potential threat of a physical assault due to his numerous complaints. However, Williams admits that all his grievances and complaints related to those alleged incidents of abuse were deemed unfounded. Thus, Williams has failed to demonstrate that either party had actual or constructive knowledge of any abuse. Accordingly, I find that S.K. Young, and R.A. Young are not liable for the actions of their subordinates and will grant their motion for summary judgment. See Davis v. Lester, 156 F.Supp.2d 588, 597 (W.D. Va. 2001).

Additionally, as Williams has failed to allege that McKinney was personally involved in the alleged assault and has provided no other reasonable basis for liability, I find that McKinney's motion for summary judgment as to this claim must be granted.

**B.     Destruction of Property**

Williams alleges that on September 14, 2001 and September 21, 2001, defendants intentionally damaged his personal property by ripping the cover of his Bible and throwing away his religious newsletters. Defendants deny that any of Williams property was destroyed, however they note that during cell searches contraband items are confiscated and excessive trash may be thrown away. An institutional investigation of Williams complaint related to the alleged September 14, 2001 incident revealed that officers had only thrown away excessive trash in Williams' cell. There was no report of any other incident during the cell search, and Warden Young averred that he found

15

nothing to support Williams' claims. Furthermore, although Williams complains that his religious newsletters were missing following his transfer to the medical unit on September 21, 2005, he admits that he did not see any of the defendants actually destroy or throw away those newsletters.

As the intentional or negligent deprivation of personal property by a prison employee acting outside the scope of official policy or custom does not rise to the level of a constitutional violation, Williams is not entitled to relief for the mere loss of his property. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981).

Additionally, to the extent that Williams argues that the destruction of his religious materials violated his right to free exercise, it also lacks merit. To demonstrate that the defendants violated his free exercise rights, Williams must show that the defendants restricted his observance of practices required by his sincerely-held religious beliefs. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 345 (1987). Although Williams states that his religion requires religious materials be handled with some degree of care, he admits that he is able to read and study his Bible and practice the tenants of his religion despite the ripped cover and missing newsletters. Furthermore, as Williams admits he did not actually see defendants throw away his religious newsletters and as defendants have provided evidence that they did not destroy his religious materials, I find that defendants are entitled to judgment as a matter of law as to this claim and will grant their motion for summary judgment on this issue.

### III. Defendant Correction Officers Kiser, Shoemaker, and Minton

Williams claims pertaining to Correctional Officers Kiser, Shoemaker, and Minton may dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from those claims and Williams' submissions

16

that he is not entitled to relief. See 28 U.S.C. § 1915A(b)(1). To state a cause of action under § 1983, a plaintiff must establish that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988).

As noted above, Williams is not entitled to relief regarding his claims that he was left outside without a jacket on April 18, 2001, that he was assaulted in his cell on September 14, 2001, and his personal property was destroyed on September 14, 2001 and September 20, 2001. Additionally, although given amble opportunity to discover the names of the unknown officers who participated in the alleged assault on November 6, 2001 and amend his complaint accordingly, Williams has failed to allege that Correctional Officers Kiser, Shoemaker, or Minton were personally involved in that assault. Accordingly, I find all claims against correctional officers Kiser, Shoemaker, and Minton must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### IV. Correctional Officer Collens

Williams has named Correctional Officer Collens as an active participant in the November 7, 2001 assault. However, defendants aver that Wallens Ridge State Prison did not employ any party with that name during the period of the alleged assault. Additionally, the defendants note that during that time period the prison employed multiple correctional officers with the last name "Collins." As the prison did not employ a Correctional Officer Collens during the time period in question and as Williams has failed to make any efforts to further describe or name an appropriate "Collins," I find that all claims against "Correctional Officer Collens" must be dismissed.

## V. Conclusion

Based on the forgoing, I find that Williams has failed to present any issue of material fact as to his claims that he was forced to remain outside in the cold on April 18, 2001, that he was assaulted on September 14, 2001, and that his personal property was destroyed on September 14, 2001 and September 20, 2001. Accordingly, defendants motion for summary judgment on these claims is granted.

Likewise, I find that Williams has failed to present any issue of material fact regarding the November 7, 2001 incident as to R.A. Young, S.K. Young, and Correctional Officer McKinney. Furthermore, I find that those defendants are entitled to judgment as a matter of law and will therefore grant their motion for summary judgment. However, I find that Williams has presented issues of material fact as to his claim of excessive force against Sgt. Hamilton, Sgt. Collins, Lt. Galliher, and Correctional Officer Ely for the November 7, 2001 incident. Accordingly, their motion for summary judgment is denied.[7]

Additionally, I find that Williams has failed to raise any claims of constitutional magnitude against Correctional Officers Kiser, Shoemaker, and Minton. Accordingly all claims against these defendants are hereby dismissed pursuant to 42 U.S.C. § 1915A(b)(1). Further, I find that as the prison did not employ a Correctional Officer Collens during the time period in question nor has Williams made any attempts to describe a Correctional Officer Collins, all claims against "Correctional Officer Collens" are dismissed

---

[7]The court notes that defendants did not address plaintiff's First Amendment claim that the cutting of his dread lock caused a "gap" in his religious experience. Accordingly, this claim will go forward, but only as to those defendants against whom plaintiff has specifically alleged participated in the assault.

18

The Clerk of the Court is directed to send a certified copy of this Opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

ENTER: This 28th day of Nov. 2005.

/s/ Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE

19